WIGGINTON, Judge.
This cause is before us on appeal from the amended final judgment of the circuit court declaring Senate Bill 1249 (Chapter 79-276, Laws of Florida) to have been invalidly enacted and therefore to be a nullity. We reverse.
The facts as gleaned from the record reveal a legislative history of Senate Bill 1249 frought with frenzied debate and stunning tactical machinations. The bill, relating to interstate and intrastate road system vehicle weights (amending § 316.535(4), Fla.Stat.) was first introduced in the Senate on May 17,1979, during the regular session. The American Automobile Association (AAA), appellees herein, along with other interest groups, vigorously opposed the bill; it soon became the center of intense political debate. Lobbying had reached a fevered pitch. The bill passed the Senate but failed to do so in the House.
During the final hours of the session, however, both houses had passed Senate Concurrent Resolution 1318 by three-fifths vote, as required by Article III, Section 3(d), Florida Constitution, extending the session for six days. The resolution further stated:
The regular session so extended shall only consider the general appropriations bill, the house and senate conference committee report, thereon with related implementing measures; house bill 1707 relating to pari mutuel wagering; senate bill 1317 relating to drug abuse and the redefinition of cannabis; tax relief; certification of judges; establishment of the Fifth District Court of Appeals (sic); regulatory practice acts; intra-district legislative expenses; legislative salaries; and in addition, such other matters or new business as may be taken up with the consent of two-thirds vote of the membership of each house. (Emphasis added)
Debate on SB 1249 raged in the extended session. Pursuant to the procedure mandated by the concurrent resolution, the House of Representatives garnered a two-thirds vote of its membership to further consider the bill. On the last day of the extended session, the bill passed the House and barreled to the Senate. A quarter-hour was left before the Senate faced sine die adjournment.
With what can at best be viewed as questionable political manipulation, the Senate *118 avoided certain hurdles by abbreviating its consideration of the bill and omitting the two-thirds vote. The bill was rammed through with blistering speed and was passed, 21 to 18, a stellar victory for its proponents. The whirlwind extended session was adjourned.
Left in the dust, AAA girded itself and launched a second assault, this time choosing a collateral attack. The Senate Journal for the 1979 session incorrectly reflected that a motion had been made and a two-thirds vote of the Senate had been taken prior to final consideration of SB 1249. In order to have the Journal corrected, AAA filed a petition for alternative writ of mandamus in the Circuit Court for Leon County, directing the secretary and the president of the senate to correct the oversight by expunging the entry, or to show cause why a peremptory writ of mandamus should not issue. On November 16, 1979, the circuit court issued the writ.
Inspired by this minor coup, AAA filed a petition for extraordinary writ in the Supreme Court of Florida seeking, in effect, a declaratory judgment on the validity of SB 1249 in light of the corrected journal entry. The case was transferred on the Senate’s motion to the circuit court, which found that the two-thirds consent requirement contained in the concurrent resolution for “other matters” had not been met by the Senate and therefore Chapter 79-276, Laws of Florida, was a nullity. The circuit court directed the Secretary of State to make an appropriate change in the “statute law” of the state, and AAA won the battle. Now, however, we hold that it must unfortunately lose the proverbial war.
Several points have been raised on appeal, but the crux of the issue presented for our review is whether, by violating the provisions of the concurrent resolution, the Senate violated the Florida Constitution, thereby necessitating invalidation of the bill subsequently passed. The circuit court answered that question in the affirmative by reasoning that the provision in Article III, Section 3(d), Florida Constitution, allowing for the extension of the legislative session by a three-fifths vote, necessarily implies “that those whose vote for the extension are necessary may impose whatever conditions they may deem wise to restrict the time of the extension and the matters to be considered ... (emphasis added).” We decline to hold the percentage vote, mandated by the constitution, works to enlarge the conditions of that vote to constitutional proportions.
It is a cardinal rule that, in passing upon the constitutionality of statutes, nothing but a clear violation of the constitution will justify the courts in overruling the legislative will.[1] It is also universally held that a legislative act cannot be declared invalid for failure of a house to comply with its own rules of procedure.[2]
Article III, Section 3(d), Florida Constitution, provides in pertinent part:
A regular session of the legislature shall not exceed sixty consecutive days ..., unless extended beyond such limit by a three-fifths vote of each house. During such an extension no new business may be taken up in either house without the consent of two-thirds of its membership, (emphasis added)
Thus, under the constitution, only the consideration of “new business” during an extended session requires a two-thirds consent vote. That is the organic law pertinent here. Senate Bill 1249 was not “new business” requiring a two-thirds vote under the constitution, therefore that law was not violated by the Senate. Rather, the Senate violated one of its own rules, i.e. the condition contained in the concurrent resolution *119 requiring a two-thirds consent vote before consideration of “such other matters.”[3]
Senate Concurrent Resolution 1318 passed by the requisite three-fifths vote in order to extend the regular legislative session. The mandate of Article III, Section 3(d) was satisfied. The conditions contained in the resolution, however, did not by that vote take on constitutional dimensions. That the conditions were violated speaks only to the ethics of the Florida Senate, not to the constitutionality of the Senate bill.[4]
Due to our decision today, we need not reach appellants’ final point on appeal. The amended final judgment of the circuit court declaring Senate Bill 1249 a nullity is hereby REVERSED.
WENTWORTH, J., concurs.
BOOTH, J., dissents with opinion.

. “All Acts of the Legislature which are duly enacted according to constitutional prerequisites ... are statutes ... [a]nd should be given effect as such ... unless they are unconstitutional.” State ex rel. Landis v. Dickenson, 103 Fla. 907, 138 So. 376, 378 (1931).

. See 1 A. Sutherland, Statutory Construction 4th ed., §§ 7.01 and 7.04. Similarly, the Legislature by statute or joint resolution cannot bind or restrict itself or its successors as to the procedure to be followed in the passage of legislation, id., at 264.

. The record does not support appellants’ argument that SB 1249 was a “regulatory practice act” within the call of SCR 1318. The legislative intent behind that phrase was shown to have pertained to the statutory regulation and licensing of the practice of various professions and occupations within the Department of Professional Regulation. The Final Committee Report of the 1979 House Committee on Regulatory Reform, of which the circuit court took judicial notice, conclusively so demonstrates. Therefore, SB 1249 falls within the ambit of “such other matters” in the concurrent resolution.

. Senate Bill 1249 was subsequently readopted by the passage of Senate Bill 234, Chapter 81-2, Laws of Florida. Because the defect in SB 1249 was not constitutional but merely procedural, it was cured by virtue of the reviser’s bill. Massachusetts Bonding & Insurance Company v. Bryant, 175 So.2d 88 (Fla. 1st DCA 1965), aff'd, 189 So.2d 614 (Fla.1966).